LAW OFFICES OF STEVEN J. KOSSUP, PC                    SK1765
One Mill Street, Post Office Box 158
Branchville, New Jersey 07826
(973) 948-9731 (Fax) 948-9733
ATTORNEY FOR PLAINTIFF JAVIER ARROYO

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Javier Arroyo | |
| | Docket: 03cv5959 (ksh) |
| Plaintiff | |
| | |
| v. | Amended Complaint for Damages Under the United States Constitution and Under the Unites States Code |
| **The City of Newark**, a Municipal Corporation, | |
| **Robert Rankin,** in his official capacity as City of Newark Police Director and in his personal capacity, **Anthony Ambrose,** in his official capacity as a City of Newark Chief of Police in the Newark Police Department and in his personal capacity, **John Doe,** 1 to XX pleaded as fictitious person(s) in his or her official capacity as a Newark Agent or employee and in his or her personal capacity, **ABC Corporation 1-5** pleaded as fictitious entities. | |
| | |
| Defendants | |

2

## ALLEGATION OF JURISDICTION

1.  The within action arises under the Equal Protection Clause of the Fourteen Amendment to the Constitution of the United States, §1, as hereinafter more fully appears.

2.  The within action arises under the Due Process Clause of the Fourteen Amendment to the Constitution of the United States, §1, as hereinafter more fully appears.

3.  The within action arises under the Unreasonable Searches and Seizures Clause of the Fourth Amendment to the Constitution of the United States, as hereinafter more fully appears.

4.  The within action arises under the Civil Rights Act, U.S.C. Title 42, §1983, as hereinafter more fully appears.

5.  This action arises under other Constitutional Provision or Federal Statute as may apply and be revealed through discovery.

## COUNT ONE

6.  Plaintiff Javier Arroyo (Plaintiff) was a Police Officer for the City of Newark Police Department. Plaintiff resides at 264 Ridge Street, 2nd ,City of Newark, County of Essex, and State of New Jersey, . He is a citizen of the United States of America.

7.  Defendant City of Newark is a Municipal Corporation with a principle address of 920 Broad Street, Newark, N.J. 07102. The Newark Police Department is a division of the Defendant City of Newark, and will hereinafter be included in reference to or when referred to as "Defendant City of Newark." Likewise, the Office of Professional

Responsibility, the Office of Professional Standards, and the Medical Services Section are Divisions within the Newark Police Department and are incorporated with any reference to Defendant City of Newark. In addition, other divisions may be involved in the facts stated herein thought their names may be unknown at present. Collectively these units are to be understood herein as "Defendant City of Newark."

8.    Defendant Robert Rankin (Defendant Rankin) is the police director for Defendant City of Newark's Police Department. Defendant Rankin has a business address of 31 Green Street, Newark, N.J. 07102. He is responsible for the policy making in the NPD. Defendant Rankin is pleaded as an individual as well as a policy making official of the City of Newark.  Defendant Rankin's home address is unknown. This defendant will hereinafter be referred to in his individual and official capacity as "Defendant Rankin."

9.    Defendant Chief Anthony Ambrose (Defendant Ambrose) is the commander in Chief of the Defendant City of Newark's Police Department. Defendant Ambrose has a business address of 22 Franklin Street, Newark, N.J. 07102. Defendant Ambrose is pleaded both as an individual and as an official of the Defendant City of Newark. His home address is unknown. This Defendant will hereinafter be referred to in his individual and official capacity as "Defendant Ambrose."

10.    John Does 1 to XX are pleaded in their official capacity as a Newark Agent or employee and in their personal capacity and are either male or female persons acting as an employee, agent, servant, or other person acting directly for any or all Defendants or acting at the direction of any or all defendants. John Does 1-XX are fictitious names, real

names being unknown at this time, who were active and involved in the operative core of facts that gave rise to the claims noticed herein.

11. On or about February 2, 2003, all Defendants terminated Plaintiff under Departmental Charges that he refused to submit to a urine test.

12. On November 8th, 2002, Captain Raymond Golden (Captain Golden) received a telephone call from an anonymous caller (Informant) stating that Plaintiff was using marijuana.

13. The informant gave general information about Plaintiff.

14. The informant gave limited information about Plaintiff.

15. The Informant did not give his identity.

16. The informant gave information about Plaintiff that was commonly known within the Defendant City of Newark's Police Community.

17. The Informant contacted Captain Golden on a taped line and gave the information in the transcript attached hereto as Exhibit A and made a part hereof.

18. Captain Golden consulted with Defendant Rankin and Defendant John Does I-XX on this situation.

19. Defendant Rankin issued a Confidential Police Director's Memo 02-985 [hereinafter].

20. The Director's Memo authorized the warrantless search of Plaintiff's urine.

21. The Director's Memo authorized a drug test of Plaintiff's bodily fluids.

22.    All defendants thereafter directed members of the City of Newark Police Department, under the color of law, to seek out Plaintiff in accord with the dictates of the Director's Memo to administer the warrantless search.

23.    Lieutenant Anthony Buono, under color of law and under the authority granted by the Memo, all defendants, and John Does I-XX, contacted Plaintiff and advised him to come into Medical Services, an office at the Defendant City of Newark's Police Department.

24.    Lieutenant Anthony Buono, presented a pretextual reason for Plaintiff's appearance so that Plaintiff would come into Medical Services.

25.    Lieutenant Anthony Buono at 2230 hrs [11:30 pm] on November 13th, 2002, told Plaintiff that he had a package for Plaintiff in connection with Plaintiff's effort to obtain disability retirement.

26.    Plaintiff arrived to obtain the package so promised on November 14th, 2002 at 1000 hr. [10:00 am].

27.    Lieutenant Anthony Buono advised Plaintiff that he had given him a fictitious reason for the appearance at the Medical Services section so that he would show up and submit to a random drug test.

28.    Lieutenant Anthony Buono initially ordered Plaintiff to submit to a random drug test and provided him with several documents apparently related to a random drug test.

29.    Plaintiff initially complied with the request and filled out the documents.

6

30.    Plaintiff sensed that there was something wrong with the order that he should take a random drug test.

31.    Plaintiff asked if he could speak to a union representative before taking the test.

32.    Lieutenant Anthony Buono denied this request.

33.    Plaintiff asked to speak with his attorney, but Lieutenant Anthony Buono denied this request.

34.    Lieutenant Anthony Buono then advised Plaintiff that he was actually not there for a random drug test, but rather for a test based upon reasonable suspicion.

35.    Presently, then, Lieutenant Anthony Buono had given Plaintiff a series of shifting reasons for Plaintiff's appearance.

36.    Plaintiff asked to speak with a representative of some type before taking the test.

37.    Lieutenant Anthony Buono demanded immediate compliance with the order.

38.    Plaintiff did not immediately comply with the order but sought clarification of his rights given the circumstances.

39.    Lieutenant Anthony Buono considered this a refusal and ordered Plaintiff to be suspended and charged with Failure to Submit to an Authorized Drug Screening Test.

40.    The Defendant City of Newark Police Department Departmental Docket for these charges are: CAP 02-283 and IOP 02-961.

41.    Plaintiff was terminated by Defendant Ambrose, all defendants, and John Does I-XX for Failure to Submit to a Urine Test on February 2, 2003 over Plaintiff's objection to the basis for the termination.

42.    The actions of Defendant Anthony Buono and Defendants John Does I-XX were ratified through the termination by Defendant Robert Rankin.

43.    Prior to that termination. Plaintiff made oral motion at a Departmental hearing before Defendant Ambrose that the Defendant Newark and Defendant Ambrose dismiss the charges as the information given by the Informant did not provide an adequate basis for a warrantless search of Plaintiff's bodily fluids.

44.    Defendant Ambrose denied Plaintiff's motion and proceeded with termination.

45.    Defendant Ambrose was aware at the time of the termination that Plaintiff had been retired by the Division of Pensions and Benefits pursuant to a Disability Pension under NJSA 43:16A-7.

46.    Notwithstanding this knowledge, Defendant Ambrose terminated plaintiff.

47.    This termination illegally established Plaintiff as having been fired, and therefore Plaintiff is not eligible for health benefits and other benefits under the applicable Collective Bargaining Agreement that would normally be available to Plaintiff as a retired officer and other disabled officers similarly situated.

WHEREFORE for violation of Plaintiff's rights under the Due Process Clause of the Fourteen Amendment to the Constitution of the United States, §1, Plaintiff demands judgment against all defendants for:

    A.    Actual damages;

    B.    Punitive damages;

    C.    Attorney fees;

    D.    Court costs; and

    E.    Such other relief as the Court may deem equitable and just.

## COUNT TWO

48.    Plaintiff incorporates all of the preceding paragraphs as if fully set forth herein.

49.    The Plaintiff was called upon and ordered by the Defendants to submit to the illegal search of his urine..

50.    Plaintiff was terminated because he did not immediately submit to this search.

51.    As such, Plaintiffs suffered termination for allegation of a refusal to submit to an unreasonable search and seizure of body fluids by all defendants.

**WHEREFORE** for violation of Plaintiff's rights under the Unreasonable Searches and Seizures Clause of the Fourth Amendment of the United States Constitution of the United States and other applicable Constitutional provision or law, rule, or regulation, Plaintiff demands judgment against all defendants for:

    A.    Contractual Benefits of employment or retirement lost due to termination back to the date of termination of Plaintiff's position;

    B.    Actual damages;

C.   Punitive damages;

D.   Attorney fees;

E.   Court costs; and

F.   Such other relief as the Court may deem equitable and just.

## COUNT THREE

52.   Plaintiff incorporates all of the preceding paragraphs as if fully set forth herein.

**WHEREFORE** for violation of Plaintiff's rights under Civil Rights Act, U.S.C. Title 42, § 1983 and other applicable code, statute, or Constitutional Provision, Plaintiff demands judgment against all defendants for:

A.   Contractual Benefits of employment or retirement lost due to termination back to the date of termination of Plaintiff's position;

B.   Actual damages;

C.   Punitive damages;

D.   Attorney fees;

E.   Court costs; and

F.   Such other relief as the Court may deem equitable and just.

## COUNT FOUR

53.   Plaintiff incorporates all of the preceding paragraphs as if fully set forth herein.

**WHEREFORE** for violation of Plaintiff's rights under Civil Rights Act, <u>U.S.C.</u> Title 42, §1983, and other applicable provision. rule, or statute, Plaintiff demands judgment against all defendants for:

      A.    Contractual Benefits of employment or retirement lost due to termination back to the date of termination of Plaintiff's position;

      B.    Actual damages;

      C.    Punitive damages;

      D.    Attorney fees;

      E.    Court costs; and

      F.    Such other relief as the Court may deem equitable and just.

Law Office of Steven J. Kossup, PC
Attorney for Plaintiff Arroyo


BY: _____
              Steven J. Kossup, Esq.

Dated: 12/10/03

Exhibit A

Today's date is November 12 here, 2002
This is a cassette recording taken from the Master recording (dead air)
Line 6172 on professional responsibility. We will be monitoring a call between Captain
Raymond Golden and an anonymous caller. The time on the master recording is 10 15
hours.

GOLDEN: Internal Affairs, Captain Golden, how can I help you?

CALLER: Yes, hi, I'm calling uh, to inform you that you might be interested in knowing
that one of your cops is milking your City.  You guys are paying him to sit home and
smoke weed.

GOLDEN: Uh Ok. Who is this Officer?

CALLER: Uh. Javier Arroyo.

GOLDEN : (unclear)  and how do you know this.  (Dead air)  How do you know this, sir.

CALLER: Because I am the person that he buys from.

GOLDEN: Ok what is your name?

CALLER: I'd rather not say.

GOLDEN:  Ok and uh, when was the last time you sold him some uh, weed?

CALLER: Yesterday.

GOLDEN: Uh, can  you, what did he do, come over to your house and buy it?

CALLER: Not to my house.  He came out to the block

Dead air

GOLDEN: How long has be been doing this?

CALLER: Well you guys have been paying him to be home sick for over a year. That's
how long I've been dealing with him. So he's been milking the City.

Dead air

GOLDEN: Alright. So he is out sick now.

CALLER: Yep, supposedly he got pricked by a needle or something like that.

GOLDEN: Alright, and you have been dealing with him for a year.

CALLER: Yep

GOLDEN: OK and whereabouts does he make these buys at.

CALLER: Clifton Avenue by the Cathedral. Sometimes Seventh avenue by Essex County Sheriff's office.

Dead air

CALLER: You guys never seem to to catch on. Apparently there's drinks and stuff that he can drink before he's tested so he comes up negative.

GOLDEN: No I don't think so. Because uh, especially marijuana, that stays in your system the longest of any drugs.

CALLER: Yeh but there's a pill...

GOLDEN: You can give them a urine test

CALLER: Yeah, there's a pill called uh goldenseal. if you take it every day and have one of these drinks before...

GOLDEN: I don't think that like, uh, what you call it, a herbal remedy, or an herbal uh additive would do that or else all kinds of people would be doing that. But like, goldenseal and what other thing did you say?

CALLER: It's some kind of drink. I don't know the name of it. If I went to the place and bought it, I would know what it is. I know it works. I've used it before.

GOLDEN: Hmm. Can you find out what the name of that drink is?

CALLER: Sure.

GOLDEN: You call me back with it?

CALLER: Not a problem. If you want to catch him, I suggest you show up at house after hours.

GOLDEN: Well really, you don't have to catch him uh, while he, you know, smoking it. You just bring him in for a drug test and if he's been smoking it, it will come up on that.

CALLER: Yeah, you're right. If you spot check him.

GOLDEN: Yeah

CALLER: Yeah.

CALLER:  You let him know in advance, and you know, he'll have time to cover up again

GOLDEN:  No, no I'm not going to do that.  OK, Javier Arroyo…

CALLER: I figured I'd let you know.

GOLDEN:  OK

CALLER:  It's kind of sad that you know he's getting paid to do this.  Especially being a cop and all.

GOLDEN:  Um hum.

CALLER:  But,  I'll call you back with that information.

GOLDEN:  Ok. Thanks a lot.

CALLER:  Thank you.

GOLDEN: Bye bye.

This concludes the cassette recordings of the master recording tapes. November 8th year 2002. The time on the master recording is 10 19 hours.